# CHARLESTON.

MARGARET MEEKS v. OHIO RIVER RAILWAY COMPANY.

Submitted June 18, 1902.    Decided November 29, 1902.

1. RAILROADS—*Damages—Contributory Negligence.*
   To excuse a railroad company from suddenly and without warning backing a freight train against a person lawfully using a public crossing, it must be shown in evidence that such person was guilty of some act of legal negligence contributing to her injury, such as a person of ordinary prudence would not be guilty of under the same circumstances. (p. 102).

2. RAILROADS.
   A person using a public crossing over a railroad is not bound to assume that the company will negligently without warning back a motionless train against her. (p. 103).

3. RAILROADS—*Extraordinary Care—Negligence.*
   Extraordinary care or caution is not required of persons using a public crossing, to avoid the unforeseeable negligence of those in charge of a railroad train. (p. 103).

Error to Circuit Court, Mason County.

Action by Margaret Meeks against the Ohio River Railway Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

RANKIN WILEY and H. P. CAMDEN, for plaintiff in error.

CHAS. E. HOGG and J. U. MEYERS, for defendant in error.

DENT, PRESIDENT:

Margaret Meeks obtained a judgment in the circuit court of Mason County on the 15th day of May, 1901, against the Ohio River Railroad Company, amounting to the sum of two thousand dollars, for alleged injuries.

The judgment was rendered on a demurrer to the evidence.

There is some objection urged to the evidence of Dr. W. P. Neale, because he testified as to what the plaintiff and her attending physician, Dr. Sayre, told him. Dr. Neale was not being strictly examined as an expert, but was being interrogated with regard to a personal examination made by himself as to the condition of the plaintiff. Of course it was improper for him to state to the jury what the plaintiff or Dr. Sayre told him as to her condition, but he had the right, being a physician, to testify as to his personal examination made in the manner in which physicians usually diagnose a case, and this is not only by actual examination of the organs and limbs of the patient, but inquiry as to the symptoms, pains, and otherwise. The court therefore properly instructed the jury to disregard as incompetent evidence the statement made by the plaintiff and Dr. Sayre to Dr. Neale, but it did not err in permitting the opinion of Dr. Neale, together with his sources of knowledge to go to the jury to be considered by them. In such cases the question of damage is largely with the jury, and unless plainly excessive, the court will not interfere with the amount thereof. As heretofore often held, the court must look at this case as though the judgment depended on the verdict of a jury. *Teale* v. *Railroad Co.,* 49 W. Va. 86; *Shaver* v. *Edgell,* 48 W. Va. 502 (37 S. E. 644); *Bennett* v. *Perkins,* 47 W. Va. 245 (35 S. E. 8); *Gunn* v. *Ohio River Railroad Co.,* 42 W. Va. 676. The facts must be regarded in the light most favorable to plaintiff. They are as follows, to-wit:

The defendant's railroad extends north and south through Mason City along First street. It crosses over Horton street within a square of plaintiff's residence. The defendant also had a side track extending along First street, the switch entrance

to which from the main track was three hundred and seventy-five feet south of Horton street on First street. On down First still further, a distance of about fourteen hundred and eighty feet from Horton street, the company had a switch known as the Hope Furnace switch. The railroad track from Horton street south almost down to the Hope Salt Furnace switch was practically a straight track, with the view of the track from Horton street south unobstructed. There were two foot crossings over the railroad track on Horton street, one being on the south side, and the other on the north side, and being practically extensions of the sidewalk on each side of the street across the railroad track, except that these crossings were constructed of boards. On May 2d, 1898, a train of freight cars pulled into Mason City from the north, and stopped on the main line on First street with the back end, or caboose of the train, on the upper, or north side of Horton street, with the bumpers hanging partly over the crossing, and with the rest of the train extending from there down close to the frog of the switch of the side-track three hundred feet below. This train did some switching at that point, by disconnecting the engine from the front end of the train, and running it back and forth with cars in and out of the switch, or side track. After this was done, the engine then ran down to the Hope Salt Furnace switch, and picked up two cars there and was backing with these two cars up the track to the main body of the train standing just south of Horton street, as above described. Just at this time Margaret Meeks took a notion to go to her sister-in-law's house on the other side of the track and down First street. The train had consumed about ten minutes in doing the switching above described, and she had seen the train there five or ten minutes before she started from her house. She could see, and she could hear, and she was acquainted with the premises, and it was broad daylight and the view was unobstructed. She knew the train was there doing the switching. Just as she reached First street, the engine was coming slowly up the track from the Hope Salt Furnace switch. When she reached the crossing, or just before she reached it, she looked and actually saw the engine. At the time and place when she saw it, the engine was moving back toward the stationary cars, because it did not stop from the time it left the Hope Salt Furnace switch until after it had

passed up the track beyond Horton street. When she looked she does not say she saw the engine moving backward but she supposed it would go on down. No signal was given and if a signal had been given, she probably would have supposed it was a signal to start in the other direction. So she stepped in behind the caboose while the engine was moving back toward the stationary cars to which the caboose was coupled, and started across the tracks on the footway. The train was standing motionless, and there was no warning given that it was about to be moved back by the sudden impact of the engine and other cars three hundred feet away. When she had almost succeeded in getting by the train, the engine and other cars thereto attached struck the train with such force as to move it back suddenly about two feet, striking plaintiff and knocking her down. From this statement, it is plain that defendant was guilty of a high degree amounting to what is usually called gross negligence. Its train which was going south stopped across a public crossing, almost blocking it, and the engine was detached, and proceeded to do the switch work. Instead of blocking the whole crossing a narrow footway was left as an invitation to pedestrians. No one was left to guard the crossing or to warn those passing of the backward movements of the train. The plaintiff came to the crossing, saw the train motionless with the engine below the south end and assuming that it was going on southward, and that it would not be moved backward without warning, started across and was caught by the sudden backward movement of the cars. There is no pretense that the defendant was not negligent. The only defence is that the plaintiff was guilty of contributory negligence as a matter of law. As a matter of fact the question of contributory negligence is settled by the demurrer to evidence in her favor. This case must therefore be viewed from her standpoint. The plaintiff did not step in front of a moving train, but she stepped in the rear of a train standing still, when without warning of any kind it was suddenly with immense force hurled back against her. In the case of *Barker* v. *Ohio River Railroad,* 51 W. Va. 423, (41 S. E. 148), this Court held that "A railroad company cannot be excused from gross negligence on its part, although the act of the injured person contributed thereto, unless it be shown in evidence that such person was guilty of legal negligence; that is, some act

of negligence that an ordinarily prudent person would not have been guilty of under the same circumstances." What act of negligence was the plaintiff guilty of that an ordinarily prudent person would not have been guilty of under the same circumstances? She had a right to assume that the defendant would not be guilty of such gross negligence as to hurl an immense motionless train across a public crossing without warning to pedestrians in lawful use of such crossing. *Robinson* v. *Western R. Co.,* 48 Cal. 409; *McWilliams* v. *D. C. M. Co.,* 31 Mich. 274; *Solen* v. *Virginia, &c., R. Co.,* 13 Nev. 106; 8 Am. & En. En. Law (2 Ed.), 420, note 3. She was not bound to presume, foresee or take notice of gross negligence on the part of the defendant, unless in some manner warned thereof. Although she may or could have seen the engine backing toward or approaching the other end of the train, she was not bound to assume that it would strike the train with such force as to hurl it backward two feet. No such impact was necessary to couple up the train, but it was damaging to the defendant's property. Some persons are so extraordinarily prudent that they will not handle an empty gun barrel detached from the stock or go within ten feet of a motionless railroad car or train, especially if there is an engine in sight. This is not the kind of prudence the law requires. It protects those who use ordinary prudence from the negligence of those who do not use ordinary care. It is not possible for this Court to determine as a matter of law that the plaintiff did not use ordinary prudence, while the negligence of the defendant in suddenly and without warning backing its train on a public crossing over which the defendant was lawfully passing is beyond question.

The judgment is affirmed.

*Affirmed.*

---

Note by Poffenbarger, Judge, (*concurring*) :

Although concurring in the decision of this case, I do not unite in the statement of facts nor the reasoning set forth in the opinion filed by Judge Dent. I am not prepared to say, nor is it necessary to say, that it appears that the plaintiff saw the engine moving up to the detached cars for the purpose of making a coupling, and then immediately stepped behind the cars

in an attempt to cross the street, thereby placing herself within two or three feet of the rear car, and that she exercised, in so doing, ordinary care and common prudence, and was, therefore, not guilty of contributory negligence in the premises. I do not think the testimony on this point warrants the inference, to say nothing of its failure to affirmatively establish the fact, that the plaintiff did see the engine moving up toward the cars immediately before she attempted to cross the street behind them. Her testimony is, not that she saw the engine, or saw it moving up to make the connection, but only that she "saw that the engine was at the lower end." This admission is immediately followed, and in the same sentence, by this statement, "and I supposed to myself that if it started it would go on down." She had just come down the cross street for more than a square and found the crossing partially obstructed by the rear car of a long freight train. Naturally, the train, more than the engine, was the object that presented itself to her view, and the immediate cause of her danger, as she naturally assumed, if any, was the train or the rear car and not the engine which was far down the track in the distance. With her, standing at the upper end of the train, and seeing that there was no engine attached there, it was, no doubt, largely a matter of inference that the engine was at the lower end. It may have been this, or a hasty glance down the long line of cars may have revealed to her the smoke of the engine or the engine itself, without impressing upon her the fact that the engine was actually moving up to make the connection with the cars. Nor is it true, that other persons who were standing at different points on the same side of the track at some distance from the place at which she stopped and looked, say they saw the actual movement of the engine toward the cars at or about that time. Arthur Myers is the only one who says anything that could be so construed, but he does not say that. Being asked if he knew which way the train was running when it struck her, he said: "It was backing up against the cars." While his language refers to the engine, it does not import that he saw the engine back up against the cars. He knew that because the engine drove the cars up the track, although he may have seen the engine, but he does not say he did. Geo. Ohlinger was on the opposite side of the train and farther down the street and probably farther from the track than Mrs. Meeks.

At any rate it does not appear that her opportunity to see the engine was as good as his, and no witness who stood on her side of the street testifies to having seen it immediately before the coupling was made. Again, the evidence makes it fairly clear that, at the time she stopped and looked, she was very close to the rear car. That being true, the train being a long one and the track straight, her view of the track and engine was undoubtedly much obstructed by the long line of cars, so as to make it difficult for her to determine just what the engine was doing as well as its distance from the detached cars. Besides this, the open space on the track was not between a naked engine and the train, for the engine had two cars attached to it and was backing them up toward the long line of stationary cars. To one standing near the rear car this, no doubt, tended to give an impression that the whole train, engine and all, was connected and standing still on the track. Under these circumstances, I am firmly convinced that the question, whether the plaintiff saw the danger presented by the situation, is one for the jury, and that the court cannot say, upon this state of facts, as matter of law, that the plaintiff was guilty of contributory negligence. It is manifest that the fact of knowledge of danger on her part is dependent upon findings for and against a number of other questions of fact involved, and it does not so clearly appear, or stand out in such prominence and so free from question or doubt, that there is no room for two different reasonable conclusions about it.

The theory of counsel for plaintiff in error is that Mrs. Meeks saw the engine and must have observed that it was in motion, and thus became conscious of the danger and risk in attempting to cross. This is only an inference. It is unsupported by direct testimony, and it is squarely opposed by a contrary inference in favor of the defendant in error equally reasonable, to say the least. By demuring to the evidence, the demurrant admits, in favor of the demurree, all inferences of fact that may be fairly deduced from the evidence. *Mapel* v. *John,* 42 W. Va. 30; *Talbott* v. *Railroad Co.,* 42 W. Va. 561; *Garrett* v. *Ramsey,* 26 W. Va. 345. He waives all inferences from his own evidence which do not necessarily flow from it. *Garrett* v. *Ramsey, supra.* "The evidence upon a demurrer to the evidence should be interpreted most benignly in favor of

the demurree; so that he may have all the benefit, which might have resulted from the decision of the case by a jury, the proper forum from which the decision has been withdrawn by the demurrant." *Garrett* v. *Ramsey*, Syl. 3; approved in *Gunn* v. *Railroad Co.*, 42 W. Va. 676.

---

BRANNON, JUDGE, (*dissenting*):

The plaintiff was 48 years of age, in full possession of all her faculties. She had long lived near the road, knew its workings and says she was always afraid of trains. Wanting to go down street she says she looked out of the window and saw the standing train and waited a few minutes. Then she started, with view open in full sunlight.

She saw the train still standing when she reached it. There was no obstruction to sight. She looked and says she saw the engine at the other end of the train of about two hundred feet length. It is certain that she did see that engine backing up to the other end of the train, because it is absolutely sure that as she approached, and when she reached the crossing, it was backing; and if she did not observe that it was backing, she should have seen it, because she could have observed it. The truth is, she thought that the train was going south, and risked crossing.

Had she any right to do this? Had she any right to assume that it would go south, as she says she did? There the danger was open to her. She says there was no brakeman to warn her. This omission of the company all the more called for her to wait a minute or two, or three, or longer, when all danger would be gone. This negligence of the company does not excuse her from the duty of prudence.

She says she did wait a minute, and as the train was still, she thought she could safely cross. That engine was just about to couple then. She saw it. She saw the danger, because she herself said as a witness that she "ventured across." Why should she, as a prudent person, assume she could safely cross? She could so easily have avoided danger. She assumed the risk. A high degree of prudence was then demanded of her. She used none. The railroad had preference. It had pre-occu-

pied the crossing, because the car overreached it. She was bound to wait.

This is not all. The end car intruded two feet upon the narrow plank crossing, and she crossed almost rubbing her shoulder against it. Why did she not do, as everybody else does, cross five or six feet, or more from the car and thus save herself? I think her contributory negligence denied her recovery of damages.