ROBERT F. OLDFIELD *v.* R. E. WOODALL

(No. 7303)

Submitted October 26, 1932.   Decided November 15, 1932.

*Leo Loeb* and *Robert H. C. Kay,* for plaintiff in error.
*Rummel, Blagg & Stone* and *H. Rummel Anderson,* for defendant in error.

WOODS, JUDGE:

The admitted fact that defendant's Packard automobile was parked at an angle to, instead of parallel with and within four inches of, the southeast curb of Delaware Avenue, between Randolph and Virginia Streets, as required by an ordinance of the city of Charleston, is the negligence declared on in this case as the proximate cause of plaintiff's injury. Defendant prosecutes error from an adverse judgment.

Before taking up the alleged errors relating to instructions and the introduction of evidence, we will deal with the question of contributory negligence.

Plaintiff, a motorcycle policeman, who had received orders to go to 411 Randolph Street, a short distance northeast of Delaware Avenue, proceeded east on Central Avenue, which ends at the intersection of Virginia Street and Delaware Avenue, and upon arrival at such intersection turned northeast (left) into Delaware Avenue. As he crossed the intersection at eighteen miles per hour he passed within three feet of the front end of an automobile, which was then standing in the center of Delaware Avenue, waiting for the traffic light to change from red to green. It was not until he had rounded this automobile that he became aware of the presence of the

defendant's Packard (parked at an angle, with its rear end, which protruded out into Delaware Avenue a distance of eleven feet, but forty feet from the north curb-line of Virginia Street), and the fact that his approach was apparently cut off, except for an estimated three-foot opening between the end of defendant's automobile and a second car in the line of traffic waiting for the green light. Rather than attempt to stop under such conditions, he decided to direct his motorcycle through the aperture. In the attempt the right handlebar caught on the tail-light bracket of the Packard, whereby the motorcycle overturned, falling upon and permanently injuring plaintiff: He had turned off the gas as he crossed the intersection, but at no time did he apply either the hand or foot brake. Defendant asserts that plaintiff contributed to the accident by not applying his brakes, and in proceeding at a speed in excess of that permitted by the city ordinance. Assuming that neither the state law nor the ordinance of the city of Charleston relating to speed applies (a question which will be dealt with later in this opinion), was plaintiff guilty of contributory negligence in view of his statement that a motorcycle, running at eighteen miles per hour could ordinarily be stopped in thirty-five to forty feet?

The general principles which require one to act in such a manner as to avoid injury to himself, and to take such steps to avoid accidents as would be taken by a reasonably prudent person under like circumstances, are not enforced in all their rigor as to situations of sudden danger. This is a recognition of the fallibility of human nature in sudden crises and the greater probability of errors of judgment occurring when a danger is imminent, and where a person is compelled instantly, without delaying for deliberation, to adopt some course of conduct to avoid injury. *McIntyre v. Orner*, 166 Ind. 57, 76 N. E. 750. Difficult questions of negligence and contributory negligence may be raised in adjusting controversies as to responsibilities for accidents which may occur. These questions are ordinarily for the jury to determine from all the facts and circumstances of each particular case. This course is buttressed by decisions from all jurisdictions.

In the case of *Ritter v. Hicks*, 102 W. Va. 541, (135 S. E. 601) at page 544, the Court, speaking through Judge Hatcher,

said: "Upon the charge of contributory negligence, the court should review the circumstances surrounding the accident from the standpoint of the decedent. The mere fact that he suffered an injury may indicate mistaken inferences; but want of care does not necessarily accompany an erroneous decision. The law makes due allowance for 'the influences which ordinarily govern human action.' *Lent v. Ry. Co.*, 120 N. Y. 467, 24 N. E. 653. The test is not, was his judgment at fault, but does his conduct indicate that he failed to use ordinary prudence under the circumstances at the time, as he conceived them. Extraordinary care is not required in such case, and the conduct of the injured party is not to be measured by that of the highly cautious. *Meeks v. Ry. Co.*, 52 W. Va. 99, 43 S. E. 118." Plaintiff indicated that the brakes could not be applied safely prior to the righting of the machine after completing the curve. We cannot say, as a matter of law, under plaintiff's testimony, that he was guilty of contributory negligence which caused or contributed to his injury. The question is clearly one of mixed law and fact, and therefore for the jury. The latter's verdict in favor of the plaintiff is conclusive on this Court, and the judgment entered thereon must be upheld in the absence of other error.

It is urged that the trial court erred in not declaring a mistrial, after information had been elicited from the defendant's witness, Evans, upon cross-examination, to the effect that said witness, at the time of the accident, was in the insurance business. The cross-examination, statements of counsel and the rulings of the court, on this question, are as follows:

"Q. Who was the first person that talked to you about this case? MR. KAY: We will admit that we talked to him. Q. I want to know who and when with reference to this accident you talked to who was connected with the defendant's case here. A. With Mrs. Woodall. Q. When with reference to the accident? A. Right at the time of the accident. Q. And then to whom did you talk that is connected with this case? A. The next person was Mr. Kay. Q. What day was that with reference to the accident? A. I could not say. Q. Was it the same day or the next day? A. No, it was not the same day. It was sometime afterwards. Q. What is your business, Mr. Evans? Objection; overruled as going to the credibility of

the witness, and for no other purpose. Exception. A. What is my business? Q. Yes, sir. A. I am in the automobile body works business. Q. Is that your main business? A. Yes, it is. Q. What other business have you besides that? A. I don't have any. Q. What was your business at the time of this accident and a short time thereafter? A. I was in the insurance business. Q. You were an insurance adjuster, were you not? A. No, sir, I never have been. I have been an insurance agent but no adjuster.

"The witness then withdrew.

"Thereupon, the Court, counsel for the parties and the reporter retired to the Court's chamber, out of the hearing of the jury, where the following proceedings were had: MR. KAY: Before a question was propounded as to the occupation of the witness I advised Judge Rummel, of counsel for the plaintiff, that the occupation of the witness Evans at the time of the accident was in the insurance business, and I objected to a question being propounded as to his occupation, knowing that would be his answer. He answered the question, as the record discloses. I move to have a mistrial on the ground that it brings out that there is insurance involved in the case. JUDGE RUMMEL: After Mr. Kay advised me that he was an insurance adjuster or agent I asked him the question as to whether he had anything to do with the insurance company covering this car, and he advised me that he did not have anything to do with it, and thereupon I asked the question. MR. KAY: We say that question was asked and the jury was advised that the car in question is protected by indemnity insurance, and that is prejudicial error and calls for a mistrial. JUDGE RUMMEL: Do you deny making the statement that he was not connected with the company covering this car? MR. KAY: No, and I requested you not to ask that question. THE COURT: The conversation referred to occurred out of the hearing of the Court and the jury, too? MR. KAY: Yes. THE COURT: The motion will be overruled. (The defendant excepted to the ruling of the Court.) ''

We cannot see wherein anything in the foregoing could be construed as indicating to the jury that insurance was involved in the case. As indicated by the trial court, such examination is ordinarily proper as going to the credibility

of the witness. Counsel for plaintiff insisted that witness' occupation was very material in view of the apparent interest shown at the time of the accident. We can see wherein an adjuster might unwittingly be prejudiced against a plaintiff in such a case. This would seem to be the only purpose that counsel could have had in pressing the question whether he was in fact an adjuster. Nothing is shown as to the class of insurance engaged in by witness; and as already indicated, there is nothing in the questioning that indicates in the least that insurance was carried, if at all, by the defendant. This case differs very materially from those in which a mistrial was declared by reason of the fact that it was shown that defendant carried insurance. *Atkins v. Bartlett,* 101 W. Va. 263, 132 S. E. 885, and cases there cited.

Was plaintiff's speed justified under the circumstances? In cases of emergency a police officer undoubtedly stands on a parity with the fire department, and may lawfully drive at a speed greatly in excess of that permitted by statute or ordinance for ordinary vehicular traffic. *Waddell, Admrx. v. City of Williamson,* 98 W. Va. 547, 127 S. E. 396. Section 428, Barnes' Code, City of Charleston, so provides. Plaintiff's own testimony was to the effect that he was acting under instructions from headquarters. The desk sergeant, upon being called as a witness, stated: "Mr. Oldfield was at Patrick Street and Fourth Avenue at Box 40. I got a call about 411 Randolph Street. He was the first man I could get hold of at that time. I told him to make that call, and that some boys or somebody was damaging a building that was empty, and to go up there and see about it." Was this an emergency? Webster defines the term as "an unforseen occurrence or combination of circumstances which calls for immediate action or remedy." The very purpose of the law is that peace officers shall do everything necessary to prevent, suppress, and punish crime. So, the mere fact that such officer may have overestimated the importance of a call ordinarily should not be weighed against him. That plaintiff was acting in the line of duty is not denied. It matters not whether there was any real disturbance or not. It is the represented condition under which he acted that is pertinent. If he acted honestly, he is

protected as any officer would be protected in the performance of his official duty.

Plaintiff's instructions Nos. 3 and 4 told the jury in effect that the parking of defendant's automobile in violation of the ordinances of the city of Charleston was of itself an act of negligence, and if they believed that said negligence was the proximate cause of plaintiff's injury, and that the plaintiff had not been contributorily negligent, they should find for the plaintiff. Defendant apparently attacks these instructions on the theory that the violation of an ordinance is not an act of negligence, but merely evidence of negligence, citing *Krodel v. Railroad Co.,* 99 W. Va. 374, 128 S. E. 824.

While the courts of all jurisdictions adhere to the general principle that the violation of or neglect to obey a statute enacted for the benefit of others, when it is the proximate cause of an injury the statute was designed to prevent, to one within the protection of the statute who is free from contributory negligence himself, affords the injured person a right of action against the delinquent, we note that they are not in harmony as to the legal effect of such a violation. 20 R. C. L. 38; 45 C. J. 714, *et seq.* And, while a majority of the courts seem to hold that the violation of a statute is generally negligence per se, or as a matter of law, if the plaintiff can establish the necessary causal relation, an important line of authorities treat the violation of the statute or ordinance as constituting merely a *prima facie* case of negligence. *U. S. Brewing Co. v. Stoltenberg,* 211 Ill. 531, 71 N. E. 1081. Others regard it as merely competent and important evidence. *Knupfle v. Knickerbocker Ice Co.,* 84 N. Y. 488, 489. It is apparent from a cursory examination of the decisions invoking the *per se* doctrine, that in a great majority of the instances a like result would have been reached under the prima facie rule. It might be well to note at this time that we see no distinction between a violation of a statute and a lawfully enacted ordinance. *U. S. Brewing Co. v. Stoltenberg, supra.*

In *Tar v. Lumber Construction Co.,* 106 W. Va. 99, 144 S. E. 881, 882, our last pronouncement upon the subject, we held to the prima facie rule. In that case, it is stated. ''We are committed to the view that a statutory disregard constitutes 'actionable negligence' or 'prima facie negligence' when it is

the natural and proximate cause of the injury. *Norman v. Coal Co.,* 68 W. Va. 405, 69 S. E. 857; *Mangus v. Coal Co.,* 87 W. Va. 718, 105 S. E. 909; *Bobbs v. Press Co.,* 89 W. Va. 206, 108 S. E. 879.'' While, as a reading of the three foregoing cases will indicate, the above rule seems to have been followed very consistently in child labor cases, our court has at various times announced other views. *Ashley v. Traction Co.,* 60 W. Va. 306, 55 S. E. 1016; *Krodel v. Baltimore & Ohio Railroad Co., supra; Ambrose v. Young,* 100 W. Va. 452, 130 S. E. 810. In the *Ashley* case the violation of an ordinance was held to be negligence *per se,* on the theory that to hold otherwise would in effect permit the jury to substitute its judgment as to what is negligence for that of the legislature; and, in the *Ambrose* case, point two, syllabus,. we laid down the rule: ''The running of an automobile on the public highways of this state at an excessive rate of speed in violation of a statute is of itself negligence, but the wrongdoer is only liable for such injuries as are the proximate result of such illegal speed.'' In the *Krodel* case, after approving of an instruction to the effect that failure to give the usual statutory signals on approaching a crossing is ''negligence'', we approved another instruction to the effect that the mere running of a train in violation of a municipal ordinance is not negligence *per se,* but a fact to be considered by the jury along with the other facts and circumstances on the issue of negligence. The point in the syllabus in that case is to the effect that failure to obey the provisions of the statute or ordinance may be considered ''along with all other facts in the case in determining whether the railroad company was negligent in the operation of its train.''

We believe that the better rule considers the fact of the violation of a statute or ordinance as *prima facie* negligence, sufficient to cause a directed verdict in the absence of any other showing, but rebuttable. *Tarr v. Lumber Construction Co., supra,* and cases there cited. Such a rule makes due allowance for variation of circumstances.

While the two instructions complained of are not entirely in harmony with the principle of law herein approved, yet, in view of the flagrant violation of the defendant in parking his car at such an angle as to obstruct the proper use of the street,

we are of opinion that their giving did not constitute prejudicial error.

Perceiving no prejudicial error in the trial of the case, the judgment must be affirmed.

*Affirmed.*