ROSWELL SOMERVILLE

*v.*

JULEY T. DELLOSA

(No. 10133)

Submitted September 27, 1949. Decided November 29, 1949.

436

Lovins, Judge, not participating.

*Frank E. Parrack, Steptoe & Johnson, Oscar J. Andre,* for plaintiff in error.

*Milford L. Gibson, Bonn Brown,* for defendant in error.

Kenna, Judge:

This action of trespass on the case was brought in the Circuit Court of Preston County by Roswell Somerville against Juley T. Dellosa to recover damages for personal injuries and property damage suffered by the plaintiff when his truck that he was driving south on state route No. 92 left the road at a point where that highway makes a "Y" shaped connection with a secondary road leading to the Town of Tunnellton, locally called the "Raccoon Valley Road," the scene of the accident being a little less than a mile north of the Town of Newbury and its time

Reduced 30%

Map Showing Intersection of the
Tunnelton Road & State Road № 92
Lyon Dist    Preston Co  W.Va.
Mar 26, 1948.
H. E. Wilhelm, Engr.

To Reedsville

To Tunnelton

16' Black Top Surface

Berm. 5'

State Road № 92

16' Black Top Surface

Raccoon Creek

Bridge

Ramp

To Newburg

Guard Fence

Track Scales

Line of Clear Vision

Electric Pole

the rainy early afternoon of November 24, 1947. From a judgment based upon a verdict for $10,700 the defendant below was granted this writ of error. The assignments of error are fifteen in number, one being the refusal of the trial court to direct a verdict for the defendant. It is therefore necessary to state the circumstances of the case, of course remembering that in doing so conflicts in the evidence are viewed favorably to the plaintiff.

The defendant's alleged negligence consisted of his driving his 1947 Chevrolet "push on truck," loaded with coke that he was employed by a local coal company to haul to a point near Newbury, onto Route 92 from the branch road leading to Tunnellton in disregard of a stop sign on that road one hundred and twenty-five feet from the center line of Route 92 at the junction point of the two roads. In doing so he is alleged to have suddenly and without warning driven in front of plaintiff's truck going in the same direction, thus confronting the plaintiff with a sudden emergency by obstructing his southward travel toward Newbury on Route 92. In order to avoid a collision and in an attempt to pass the defendant's truck, both going south on Route 92, plaintiff cut his truck suddenly to the left, left the highway, went over the bank and into the creek, a distance of two truck lengths from where he left the road. The location of the stop sign is fixed, according to a plat prepared by, and the testimony of, a civil engineer employed by the defendant who is not contradicted and whose plat for the purpose of clarification is made a part of this opinion.

The plaintiff testified that he was driving his unloaded General Motors two ton truck toward Newbury on Route 92 in "low range" high gear at a speed of thirty miles an hour when about one hundred and fifty feet from the fork of the road he observed the defendant's truck some distance from the junction. He then sounded his horn more than once and, knowing of the stop sign on the road that Dellosa was traveling, did not see him again until the defendant was on Route 92. The plaintiff states that the defendant suddenly appeared about ten feet in front

of him. The plaintiff also states that he had decreased his speed so that he was making twenty miles an hour; that he saw cars on Route 92 beyond the defendant's truck but could not tell whether they were traveling or stationary; and that in order to avoid ramming the defendant's truck, he cut his truck quickly to the left and could not hold the road with the result that his truck went over the bank, wrecking it and injuring him.

John Renshaw, tipple foreman of the coal company, testified for the plaintiff. At the time of the wreck he was standing in front of the company's office, located between the ramp and the bridge and on the eastern side of the junction point. The defendant's truck passed him and did not stop for the stop sign on the secondary road. It entered Route 92 at a speed of between five and ten miles an hour but in turning south did not go to the right hand lane but remained in the middle of the road. His attention was directed to the plaintiff's truck by the sounding of its horn after which he observed it fifty to one hundred feet north of the point where the defendant entered the main highway. On cross examination this witness stated that the speed of the Somerville truck decreased as it approached the point where the roads forked, estimating its speed when he first saw it at between forty to forty-five miles an hour. After the wreck Renshaw called two other men from the company's office and the three assisted the plaintiff out of the truck into the company's office. When recalled as a witness for the defendant Renshaw stated that Somerville had said to him after the wreck that he had tried his brakes and that they would not hold, or words to that effect. This the plaintiff denies.

The later happenings were testified to by other witnesses. From the coal company's office plaintiff was later taken to a Newbury funeral home where first aid was administered and where his wife and his son called for him between five and five-thirty that afternoon. While at the St. Clair Funeral Home the defendant, who had since discovered that a wreck had occurred, called to inquire about the plaintiff's condition and the plaintiff testifies

that during the course of that inquiry he said that he guessed he caused the wreck and that plaintiff's property damage and medical expense would be "taken care of." This the defendant denies. The plaintiff returned to the scene of the wreck to make the necessary arrangements concerning his own truck and the following day reported to the Golden Clinic at Elkins for examination. He was discharged from the clinic on November 30 without having complained of his back. He reported back December 4 complaining of pain in his back and shoulder and upon photographing his spine he was found suffering a compression fracture of the first lumbar vertebrae. He was again hospitalized and after ten days' treatment released with his back in a cast. He was in a brace and submitting to treatment at the time of trial on April 7, 1948.

The defendant testified that on the occasion in controversy he was entering Route 92 on the Raccoon Valley Road with his truck loaded with coke on his way to a tipple a quarter of a mile below the road junction; that he passed the stop sign without stopping at a speed of about twenty miles an hour, decreasing his speed before he reached the junction so that when he entered Route 92 he was going between five and ten miles an hour. That in approaching the intersection and at about fifty feet from it he leaned forward and to the right for the purpose of getting a clear view of Route 92 and stayed in that position until twenty or twenty-five feet from the intersection, when he "put it in gear". That he saw nothing approaching on Route 92. That he heard no horns. At the time he did not know that the wreck occurred. The testimony of the defendant is corroborated in the main by defendant's witness Dorsey Conley.

Upon motion of the defendant the jury was permitted to view the scene of the accident.

It is an established principle in this jurisdiction that the violation of a statute alone is sufficient to make the violator *prima facie* guilty of negligence. *Meyn* v. *Auto Co.*, 118 W. Va. 545, 191 S. E. 558; *Oldfield* v. *Woodall*, 113

W. Va. 35, 166 S. E. 691; *Tarr* v. *Keller Lumber & Const. Co.,* 106 W. Va. 99, 144 S. E. 881, 60 A. L. R. 570. Of course to justify a recovery it must be shown by a preponderance of the evidence that the violation was the proximate cause of the plaintiff's injury. Here the contention of the plaintiff is that Dellosa's ignoring the stop sign caused his injury. The defendant counters by contending that Somerville was shown to be guilty of contributory negligence as a matter of law. The plaintiff replies by saying that the wrongful act of the defendant placed the plaintiff in a position of immediate peril and that thereafter he was chargeable only with the conduct of an ordinarily prudent person suddenly confronted with critical danger and that that is a question for jury determination. That is undoubtedly the established rule in this jurisdiction. *Oldfield* v. *Woodall,* 113 W. Va. 35, 166 S. E. 691; *O'Dell* v. *Credit Company,* 118 W. Va. 678, 191 S. E. 568. See also the annotations in 79 A. L. R. beginning at page 1277. Of course if the peril is attributable to the conduct of the plaintiff the rule does not apply. *Chaney* v. *Moore,* 101 W. Va. 621, 134 S. E. 204. We are of the opinion that in this instance the question of whether the conduct of the defendant was the proximate cause of the damages suffered by the plaintiff was for the jury and consequently that there was no error in the trial court declining to direct a verdict for the defendant.

The plaintiff in error contends that because admittedly the plaintiff below was driving his truck at a speed of twenty miles an hour as he entered the junction point of the two roads that he was thereby violating Code, 17-8-12, the provisions of which require that in approaching a public highway crossing a motor vehicle shall reduce its speed to fifteen miles an hour. The defendant in error replies to this argument by saying that the junction point of Route 92 and the Raccoon Valley Road is not a public highway crossing but is merely a spur and that the stop sign on the latter road subordinates its traffic to traffic on Route 92.

Before the provisions of Code, 17-8-12, can be invoked

the violation must be shown by a clear preponderance of the evidence for the reason that its terms are recognized as being extremely severe. *Boyce* v. *Black*, 123 W. Va. 234, 15 S. E. 2d 588. In fact if its provisions were rigidly adhered to vehicular traffic throughout the State would be noticeably slowed down. Though it contains no penal provisions its violation does result in *prima facie* negligence. Therefore we do not believe that a liberal construction should be applied to its terms so that a place where roads do not cross each other could be regarded as a "highway crossing." We therefore hold that where two roads merely meet but do not cross there is no public highway crossing within the meaning of the section under consideration.

It is contended that although the plaintiff below admittedly had the right of way over a vehicle approaching from the left, that still did not relieve him from the duty of exercising reasonable care under the circumstances. Nothing relieves from the exercise of reasonable care under all the circumstances. However, here we are not dealing with the mere question of a right-of-way. The State Road Commission felt that this junction was perilous enough to require a stop sign on the secondary road. That sign bears no relation to actual traffic. Its violation under any and all circumstances constitutes *prima facie* negligence. The violator is responsible for the damage which results proximately from his conduct.

Assignment of error No. 2 is to the giving of plaintiff's Instructions Nos. 3 and 5.

The defendant in error contends that there was only a general objection to each instruction given on his behalf. The specific objections do not appear to have been indorsed upon the instructions in the manner that is treated by Code, 56-6-20, as being correct. That section, however, does not expressly require that method. Here the specific objections appear before submission to the jury, were in writing, and cover the questions raised here. Although by no means a commendable practice, we regard this as sufficient.

Plaintiff's Instruction No. 3 is a separate itemization of the different types of damage that the plaintiff is entitled to recover in the event of a verdict in his favor. There is one paragraph covering pain and suffering, another on future earnings, still another on medical expense, yet another on property damage, a fifth on the loss of the use of a commercial vehicle, and a sixth limiting the entire recovery to $25,000.00. This instruction has been examined with care and while we see no actual error in either its form or substance, we do believe that it is well to caution against piecemeal presentation of matters that could be much more briefly expressed without risking the over accentuation of their importance.

We believe that plaintiff's Instruction No. 5 was error. The instruction in question reads as follows:

"The Court instructs the jury that if you believe that the plaintiff, Roswell Somerville, was suddenly and unexpectedly placed in a situation of imminent peril of bodily harm by the actions of the defendant, Juley P. Delossa, as shown by all of the evidence, by his method of entering of West Virginia Route 92 on the occasion complained of, then Roswell Somerville is not required to exercise that degree of ordinary care or sound judgment or discretion which would be required of him under ordinary and normal circumstances, and if you further believe that the plaintiff, Roswell Somerville, believed himself to be in imminent danger and cut his truck sharply to the left to avoid colliding with the defendant's truck and hit into the stream along the road and received serious injuries, then the plaintiff, Roswell Somerville, shall not be deemed to be guilty of contributory negligence and the jury shall assess such damages to him as in their opinion are just, reasonable and proper under the instructions of this Court and all of the evidence introduced in this case."

The instruction is bad because it assumes that a situation of immediate peril to him was the proximate cause of the plaintiff's injury. By the process of elimination, that is perhaps an accurate assumption. Yet a binding instruc-

tion should not be made to read so that the jury might believe that in the absence of fault by the plaintiff their verdict should be in his favor. In our opinion the instruction is also bad because it does not refer to the conduct of the defendant as being either negligent or wrongful. True, the violation by defendant of Code, 17-8-12, is admitted. That, however, is not negligence *per se.* The language of the instruction does not relate specifically to that occurrence. It embraces the entire conduct of the defendant. We think the instruction is further bad in not informing the jury that the position of imminent peril in which the plaintiff found himself was not due in whole or in part to his own conduct. *Elswick* v. *Transit Co.,* 128 W. Va. 241, 36 S. E. 2d 419; *Cline* v. *Christie,* 117 W. Va. 192, 184 S. E. 854. This instruction is also faulty because it tells the jury that if it believes, and does not base that belief upon a preponderance of the evidence.

The third assignment of error is based upon the refusal of the trial court to give defendant's Instructions 11, 12A and 18.

Instruction No. 11 relates to the question of contributory negligence and we believe is adequately covered by other instructions given.

Instruction No. 12A is drawn on the assumption that Code, 17-8-12, relates to road junctions such as are here involved. This question has already been discussed and our reasons stated for not applying that section.

Defendant's Instruction No. 18 is drafted on the theory that the failure of the plaintiff to reduce the speed of his vehicle when passing the sign "Slow Truck Exit" on Route 92 so as to avoid an accident to vehicles using that exit, then plaintiff was guilty of negligence and if they believed that that negligence was the proximate cause of this accident they should find the defendant not guilty. Obviously the mark "Slow Truck Exit" related only to a truck exit. No accident occurred there and negligence at that point would not have established negligence at another

point several hundred feet from there. While the speed of the plaintiff's car is of course an element to be considered, disregarding a road sign of that nature cannot be considered as the proximate cause of an accident of this sort.

In the fourth assignment of error counsel in quoting a question and answer of Dr. Golden on redirect have omitted the comment of the court following the question and preceding the answer, quoting the question and the answer verbatim from the record and not marking an omission. The part left out is the court's statement of its reason for permitting the question to be answered, which was that the subject matter of the question had been introduced by the defendant below, plaintiff in error, in its cross examination of Dr. Golden and that consequently it could properly be covered on redirect, the subject of inquiry being the aggravation of arthritis and possible atrophy of muscles. We think the trial court was plainly right.

The Court is considerably concerned about the unindicated omission from the body of a quoted part of this record in plaintiff in error's brief. It could not have been unintentional.

The other questions that go to Dr. Golden's testimony relate to his prognosis and are advanced under the contention that his answers were speculative. We do not think so. He was testifying as a medical expert concerning the conclusions reached from actual examination and treatment. His statements were unusually cautious and guarded. We do not believe he went beyond the normal observations and conclusions of an attending physician.

This assignment of error embraces comments of the court in overruling the objection of the defendant below to a question of plaintiff's counsel concerning the likelihood of the injury resulting in atrophy of the plaintiff's back muscles, the objection being based upon atrophy of the back muscles having not been specifically alleged in the declaration, and the court's comment being to the

effect that the allegations of the declaration were complete and ample. We see no error in the court's remark. Under this assignment other comments of the court are advanced as reasons for reversal. They were not objected to in the court below as comments by the court and hence are not considered.

The fifth assignment of error relates to the admission of the warrant and docket entries of a justice of the peace in proof of defendant's arrest and fine for neglecting to heed the stop sign on the Raccoon Valley Road. The objection is based upon the fact that the arrest had been admitted and that because of that fact the testimony of the justice was surplusage to the defendant's prejudice. Certainly under the best evidence rule the testimony of the justice of the peace and his official papers, while neither is regarded as a verity, of course, is the preferable method of proof. While it may be said to have been cumulative in this instance, we do not believe that its introduction overemphasized defendant's arrest to the point of error as an abuse of the trial judge's discretion.

Assignment of error No. 6 relates to the alleged excessiveness of the verdict. Considering that the verdict includes, in addition to the plaintiff's personal injury, property damages and expense of almost $2500.00, we do not believe that the verdict should have been set aside because excessive in amount. We believe this record does show minor errors concerning damages to which our attention was not directed. The plaintiff was permitted to recover for the use of a commercial vehicle during the time his truck was being repaired. This testimony was to the effect that plaintiff had earned $150.00 a week for hauling with the truck. If this item included his personal services and the use of the truck it was partly duplicated by his claim for loss of time. Furthermore, the plaintiff would not be entitled to recover the vehicle's earnings, but only the amount it would have cost him to replace the vehicle by renting one in its stead. If that had been shown to be impossible then the earnings of the vehicle, not in-

cluding those of its driver, would have been relevant on the question of damages.

For the reasons hereinbefore stated the judgment of the Circuit Court of Preston County is reversed, the verdict set aside, and a new trial awarded.

*Reversed; verdict set aside;*
*new trial awarded.*