364 S.E.2d 818

**Mary PICKETT, Administratrix, etc., Appellant,**

v.

**Anthony Lee TAYLOR, Appellee.**

**Anthony Lee TAYLOR, Appellee,**

v.

**Marshall HALL, Appellee.**

**No. 17103.**

Supreme Court of Appeals of West Virginia.

Dec. 21, 1987.

Randall L. Veneri, Princeton, for Pickett and Hall et al.

G.W. Lavender, III, Bluefield, for Taylor.

MILLER, Justice:

We consider in this appeal the propriety of a circuit court order consolidating two cases under Rule 42(a) of the West Virginia Rules of Civil Procedure (W.Va.R.C.P.), which arose out of a motor vehicle accident. That order consolidated for trial purposes (1) a suit for wrongful death resulting from the accident, and (2) a suit for battery involving an altercation immediately after the accident. Error is also assigned with regard to certain instructions. We conclude that the court abused its dis-

cretion in ordering a consolidation and that instructional error was committed. We, therefore, reverse and remand for a new trial.

Benjamin Jessie Hall, Sr. was killed on September 3, 1982 when his vehicle was struck by a pickup truck driven by Anthony Lee Taylor. The collision occurred as the deceased attempted to pull out of a convenience store parking lot onto State Route 71 near Montcalm, West Virginia. Upon impact, the deceased was thrown from his vehicle and sustained fatal injuries to his upper chest. His wife, Elizabeth Marie Hall, was a passenger in the Hall vehicle and sustained personal injuries.

Marshall Hall, a son of the deceased, witnessed the accident while working at the convenience store only a few yards away. He immediately ran to the accident situs and began to render assistance. What happened next is the subject of dispute by the parties. Taylor contends the younger Hall struck him without provocation on the left side of the chin. The testimony of other trial witnesses suggests the altercation arose after Taylor referred to the deceased as an "old son of a bitch" and said he had "pulled out in front of [him]" prior to the accident. Taylor was required to undergo surgery for injuries to his jaw.

Mrs. Hall was duly appointed as executrix of her husband's estate and, on November 2, 1983, brought a wrongful death suit against Taylor in the Circuit Court of Mercer County. She subsequently resigned as executrix, and brought personal injury suits on her own behalf against Taylor and the Hall estate. Mary Pickett, the deceased's daughter, was appointed as administratrix c.t.a. and substituted as plaintiff in the wrongful death suit.[1]

On May 4, 1983, Taylor brought suit against Marshall Hall for battery, and sought compensatory and punitive damages in the amount of $300,000. Over one year later, Taylor moved to consolidate the wrongful death and battery suits. The circuit court granted the motion in an order dated July 19, 1984. The order stated that consolidation would save expenses and promote judicial economy, as the same witnesses would be called in both cases.

After a two day trial in May, 1985, the jury returned a verdict in favor of Taylor in both of the consolidated cases. The sum of $5,520.72 in compensatory damages and $12,500 in punitive damages was awarded to Taylor in the battery suit. A final judgment order was entered on June 14, 1985, and the Hall estate brings this appeal.

### I.

We address first the plaintiff's argument that the court improperly ordered a consolidation of the wrongful death and battery suits. Rule 42(a), W.Va.R.C.P., authorizes a trial court to consolidate two or more suits pending before it where the suits "involv[e] a common question of law or fact[.]" This rule, like its federal analogue, serves to advance two related goals—to promote judicial dispatch and economy, and to guarantee substantial justice to the parties. 9 C. Wright & A. Miller, *Federal Practice & Procedure* § 2381 (1971).

The circuit court is vested with a broad discretion to determine whether consolidation is desirable. Where, however, the court abuses that discretion to the prejudice of one or more of the parties, a reversal on appeal will be warranted. We summarized these principles in Syllabus Point 1 of *Holland v. Joyce*, 155 W.Va. 535, 185 S.E.2d 505 (1971):

"A trial court, pursuant to the provisions of R.C.P. 42, has a wide discretionary power to consolidate civil actions for joint hearing or trial and the action of a trial court in consolidating civil actions for a joint hearing or trial will not be reversed in the absence of a clear showing of abuse of such discretion and in the absence of a clear showing of prejudice to any one or more of the parties to the

1. Mrs. Hall settled with both Taylor and the Hall estate in advance of trial for a total consideration of $27,500.

civil actions which have been so consolidated."

*See also, Fortner v. Napier,* 153 W.Va. 143, 168 S.E.2d 737 (1969).

■ Applying our rule in *Holland,* we conclude that consolidation of the suits involved here was an abuse of discretion. The circuit court, in its order, emphasized the overlap of potential witnesses in the wrongful death and battery suits, and concluded that consolidation would promote judicial economy. These reasons, however, overlook the threshold requirement for application of Rule 42(a). The rule specifically provides, as a condition for consolidation, that the suits "involv[e] a common question of law or fact[.]" *St. Paul Fire & Marine Ins. Co. v. King,* 45 F.R.D. 519 (W.D.Okl. 1968); *Olivier v. Humble Oil & Ref. Co.,* 225 F.Supp. 536 (E.D.La.1963); 9 C. Wright & A. Miller, *Federal Practice & Procedure* § 2382 (1971). A review of the record demonstrates convincingly that there are no common questions presented in the wrongful death and battery suits.

It is true, as Taylor points out, that the events which underlie the two suits were proximate in time and space. Of greater importance to our inquiry is that the suits were premised upon separate theories of liability and involved distinct operative facts. The wrongful death suit had as its central issues the negligence of Taylor and the deceased in the operation of their respective vehicles. These issues were to be resolved by application of motor vehicle rules on speed, lookout and right of way. Marshall Hall was not a participant in the accident and his conduct, therefore, would play no part in the jury's apportionment of negligence and assessment of damages.

The battery which occurred after the accident bore no relationship to the accident issues. Factually, it arose out of the circumstances of the altercation, and not out of the motor vehicle accident. It involved an intentional tort by a party unconnected to the automobile accident such that his role had nothing to do with its issues.

■ It is, we believe, equally apparent that substantial prejudice flowed from the consolidation order. The circumstances of the battery were highly inflamatory and prone to have an adverse impact on the wrongful death suit. There were at least two potential sources of prejudice. First, the posture of the consolidated cases could have led the jury to believe the wrongful death and battery were interdependent— that is, that recovery in the wrongful death suit was conditioned on the younger Hall being "fault free" in the battery suit. Second, it would have been only natural for the jury to seek to "punish" Hall's family for the perceived impetuousness of Marshall Hall. The cumulative and pervasive nature of the prejudice mandates a reversal under *Holland.*

## II.

We believe that additional error was committed in certain instructions given by the trial court with regard to the wrongful death claim.

### A.

The plaintiff objects to "Taylor's Instruction No. 8," as amended by the court, which dealt with the subject of yielding the right of way. The instruction informed the jury that upon approaching the highway, the deceased was obliged to *"stop* and ... not enter or start into the highway without first seeing that such a movement [could] be made with safety[.]" (Emphasis added.) The jury was further instructed that Taylor, as a driver lawfully upon the highway, was entitled to assume that the deceased would stop his vehicle prior to entry.

This entry on the highway issue is controlled by W.Va.Code, 17C–9–4, which reads:

"The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right-of-way to all vehicles approaching on said highway."

■ Taylor argues that the obligation to yield carries with it, by implication, the obligation to stop before entering the highway. We do not agree. The duty to yield to approaching vehicles merely recognizes the favored or preferred status of vehicles

already on the highway. Under W.Va. Code, 17C–9–4, a driver who wishes to enter a public highway from a private road or driveway may not proceed into the path of other vehicles on the highway unless the entry can be made safely in the exercise of reasonable care. Where a safe entry is impossible, the driver must reduce speed or stop his vehicle, as necessary, to permit the passage of favored vehicles. However, there is no absolute duty to stop in all instances. *See, e.g., Callison v. Preston,* 152 W.Va. 431, 436, 164 S.E.2d 298, 300 (1968); 7A Am.Jur.2d, *Automobiles & Highway Traffic* § 242 (1965); 3 Blashfield, *Automobile Law & Practice* § 120.16 (3d ed. 1965).[2]

We have recognized the general principle that the driver of a vehicle may assume that others will obey the law, as evidenced by this statement from *Reilley v. Byard,* 146 W.Va. 292, 302, 119 S.E.2d 650, 656 (1961):

> " 'At a street or highway intersection, unless the circumstances apprise him to the contrary, the driver of a motor vehicle is not required to anticipate violation of the law or the rules of the road by others, but rather may assume that others will comply therewith and exercise due care; but the right to rely on the care of others does not relieve him of the duty of exercising care himself.' 60 C.J.S., Motor Vehicles, Section 361, pages 859–860. See also *Divita v. Atlantic Trucking Co.,* 129 W.Va. 267, 277, 40 S.E.2d 324, 330."

We have also held, as indicated by Syllabus Point 1 of *Vaughan v. Oates,* 128 W.Va. 554, 37 S.E.2d 479 (1946), that this rule does not operate to relieve such a driver of the duty to exercise reasonable care to avoid collision with other vehicles:

> "The fact that a vehicle may have a right of way over a public road or street,

does not relieve the operator of such vehicle from the duty to operate the same with reasonable care."

*See, e.g., Donta v. Harper,* 168 W.Va. 237, 283 S.E.2d 921 (1981); *Adkins v. Smith,* 142 W.Va. 772, 98 S.E.2d 712 (1957); *Burdette v. Henson,* 96 W.Va. 31, 122 S.E. 356 (1924); *see generally,* 60A C.J.S., *Motor Vehicles* § 249 (1969).

We therefore conclude that the instruction improperly informed the jury that the deceased, as the disfavored driver, was required to stop his vehicle prior to entry upon the highway. Further, while the instruction correctly stated the rule that a favored driver may assume others will obey the law, it should have been balanced with a statement that there still existed a duty of reasonable care under the circumstances.

**B.**

The plaintiff also objects to an instruction prepared by the court which advised the jury of the speed limits fixed by W.Va. Code, 17C–6–1, but did not state the speed limit at the situs of the accident. An instruction proffered by the plaintiff, but refused, would have advised the jury that the applicable speed limit was 25 miles per hour.

This case is unusual, if not unique, in that the testimony of witnesses concerning the posted speed limit was disputed. Trooper E.W. Adams, who investigated the accident, stated that the speed limit at the accident scene was 25 miles per hour. There was a signpost in Taylor's lane of travel several yards before the store, but the sign was missing. A sign in the opposite lane of travel clearly posted the limit for the area in question at 25 miles per hour. Testimony by a former employee of the West Virginia Department of Highways tended to show that the speed limit

---

2. Our conclusion is reinforced by reference to W.Va.Code, 17C–12–6, which regulates private roads and driveways situate in business or residential districts. It provides that a driver must *stop* immediately before a sidewalk or crosswalk, but is required only to *yield* to approaching vehicles before entry upon the highway.

Other provisions governing right of way also demonstrate the distinction between the duty to stop and the duty to yield. *E.g.,* W.Va.Code, 17C–9–3 (vehicles seeking to enter a through highway or a stop intersection must stop and yield); W.Va.Code, 17C–10–2 (vehicle must yield to pedestrians on crosswalk, by "stopping if need be to so yield").

had been fixed administratively at 25 miles per hour in 1968.[3]

Taylor commented that over the years the speed in the vicinity of the store had been alternately posted at 25 and 40 miles per hour. The only speed sign he had observed as he traveled toward the store on the day of the accident read 40 miles per hour. Taylor believed the missing speed sign also had read 40 miles per hour. On cross-examination, he admitted that he had passed a sign warning of a reduced speed limit ahead and that there was a 25 mile per hour sign in the opposite lane. Taylor's testimony was substantially corroborated by his brother.

■ Taylor argues that because the applicable speed limit was disputed, it presented a question of fact to be resolved by the jury. We do not agree. There is some confusion generated by Taylor's argument, at trial and on appeal, that he lacked notice of any reduced speed limit. The plaintiff sought to prove the speed limit for the area, and its violation by Taylor, solely to prove Taylor's negligence.[4] Our inquiry, therefore, is not directed toward Taylor's actual or constructive notice of the speed limit. Rather, the speed limit merely provides a ready indicator of the proper standard of care, and its violation evidences a deviation from that standard.[5]

It is generally recognized that where the violation of a motor vehicle speed statute is relied upon to prove negligence on the part of the operator of a motor vehicle, it is not necessary to prove that the operator was aware of the speed limit. *Keeney v. Wells,* 257 S.W. 1075, 214 Mo.App. 79 (1924); 2 Blashfield, *Automobile Law & Practice* § 101.39 (3d ed. rev. 1979); 7A Am.Jur.2d, *Automobiles & Highway Traffic* § 231 (1965).

■ We turn, then, to the question whether the evidence would have supported a peremptory instruction on the applicable speed limit. We believe that such an instruction was warranted here. Testimony that a speed limit sign[6] was posted on a public highway gives rise to a presumption that the speed limit was properly authorized by the appropriate governmental agency. Once the presumption is invoked, the burden shifts to the opposing party to prove an irregularity in the authorization process which would render the speed limit void. *E.g., Harper v. Brown,* 122 Ga.App. 316, 176 S.E.2d 621 (1970); *Munday v. Brissette,* 113 Ga.App. 147, 148 S.E.2d 55, *rev'd on other grounds,* 222 Ga. 162, 149 S.E.2d 110 (1966); *see generally,* 2 Blashfield *Automobile Law & Practice* § 105.18 (1979).

---

3.  W.Va.Code, 17C–6–2, provides authority to the Commissioner to designate specific speed limits in localities:

    "Whenever the state road commissioner shall determine upon the basis of an engineering and traffic investigation that any speed limit set forth in this article is greater or less than is reasonable or safe under the conditions found to exist at any intersection or other place or upon any part of a highway, said commissioner may determine and declare a reasonable and safe speed limit thereat which shall be effective at all times or during hours of daylight or darkness or at such other times as may be determined when appropriate signs giving notice thereof are erected at such intersection or other place or part of the highway."

4.  Our traditional rule is that the violation of a motor vehicle law or ordinance is prima facie negligence. *E.g., Price v. Halstead,* 177 W.Va. 592, 355 S.E.2d 380 (1987); *Kretzer v. Moses Pontiac Sales, Inc.,* 157 W.Va. 600, 201 S.E.2d 275 (1973); *Somerville v. Dellosa,* 133 W.Va.

435, 56 S.E.2d 756 (1949); *Oldfield v. Woodall,* 113 W.Va. 35, 166 S.E. 691 (1932). As we pointed out in *Oldfield,* evidence of such a violation is "sufficient to cause a directed verdict in the absence of any other showing, but [is] rebuttable." 113 W.Va. at 42, 166 S.E. at 695.

5.  "Where a statute or ordinance is adopted by the court as defining the standard of conduct of a reasonable man under the particular circumstances, ... the unexcused violation of the provision is a clear departure from that standard, and is conclusive on the issue of the actor's negligence." Restatement (Second) of Torts § 288B, comment a (1965).

6.  Use of oral testimony concerning posted speed signs, of course, is not the only method by which to prove the applicable speed limit. A more direct method is to tender to the court a copy of the ordinance or administrative order which fixes the limit, and request that it take judicial notice thereof under Rule 202(c), W.Va. R.Evid.

The sole point of dispute at trial dealt with the limit which appeared on the missing speed sign. All of the parties, however, admitted the existence of a 25 mile per hour sign in the opposite lane which controlled the speed limit at the point of the accident. As this was the only extant speed sign, the plaintiff was entitled to the benefit of the above cited presumption. Absent evidence of irregularity in the authorization of the limit, the plaintiff's instruction stating that the speed limit was 25 miles per hour should have been given.

### III.

For the reasons discussed above, the judgment of the Circuit Court of Mercer County is reversed and the case is remanded for a new trial.

Reversed and remanded.