## MARIA DONATO v. MINNEAPOLIS STREET RAILWAY COMPANY AND ANOTHER.[1]

December 19, 1952.

No. 35,796.

*Amherst Tautges* and *Chester G. W. Gustafson,* for appellant.
*Mahoney, Cragg & Barnett* and *J. W. Cragg,* for respondents.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying plaintiff's motion for an order vacating a verdict and granting a new trial.

---

[1]Reported in 56 N. W. (2d) 308.

On August 31, 1949, about 1:25 p. m., plaintiff, then about 49 years of age, was injured on the crosswalk of the intersection of Washington and Hennepin avenues in Minneapolis by a motorbus operated by defendants. She had walked down the west side of Hennepin avenue from Sixth street and, upon reaching Washington avenue, turned to the right, intending to cross Hennepin avenue on the south crosswalk. In order to do so, it was necessary for her to wait on the curb for the light of the traffic semaphore to change. Plaintiff claims that after the traffic light changed to green she looked to the left and right and over her left shoulder, saw nothing coming, and started across Hennepin avenue on the south crosswalk from the west to the east side. After stepping down from the curb and proceeding six or seven steps, with the green light in her favor, she was struck by, or collided with, a bus of defendant company, which had approached the intersection from the west on Washington avenue and had made a right turn onto Hennepin avenue at approximately the same time that plaintiff stepped off the curb. Plaintiff testified that after she had taken several steps from the curb she again looked both ways and over her left shoulder and saw no bus. She did not see what struck her, but she fell down. Immediately after the accident, she was found lying on the street with the right front wheel of the bus touching or pinching her right leg. The crosswalk involved was painted and was about 28 feet wide.

It appears from the record that previous to the time the traffic light turned green for Washington avenue traffic the driver of the bus, traveling east on Washington avenue, had stopped at the regular bus stop some 15 or 18 feet west of the west crosswalk on Washington avenue to discharge passengers. The driver said that when this was done he started the bus before the light was green for him and pulled up to the crosswalk where he stopped again and waited for the light to turn green; that after the light changed he proceeded to make a right turn onto Hennepin avenue; and that he was looking for people in the vicinity where his bus was going to turn but did not see plaintiff at any time. He claimed that the

first knowledge he had that anything had happened was when he heard a thump on the side of the bus and that he then stopped the vehicle within two feet. He said that he got out of the bus and saw plaintiff lying parallel with the yellow line of the west curb of Hennepin avenue with the bus wheel touching her leg. When asked if he blew his horn before he made the right-hand turn from Washington onto Hennepin, he said that he did not recall, but "To my knowledge, there was nothing to blow my horn for," since there was no one in front of the bus or on the crosswalk "when I started in."

Orville Stang, a witness for plaintiff, testified that he got on the bus as a passenger at Plymouth and Washington avenues and was sitting in the seat directly behind the driver. He explained that the bus stopped near the intersection of Washington and Hennepin, somewhat back of a newsstand located on Washington avenue, for the purpose of discharging passengers. He said that after doing this the bus pulled out into the street, stopped for the signal, and, when the light changed in its favor, slowly started again to make the right turn. He testified that the first he knew of the accident was when he "saw a flash of lavendar or purple coat by the front window that is on the door," and that he called the driver's attention to the fact that he thought a pedestrian had been hit, whereupon the driver stopped the bus almost immediately. He said that he followed the driver out of the bus and that the right front wheel of the bus was pushed against the right leg of plaintiff. It was his recollection that she was "several good steps away" from the west curb of Hennepin avenue when he saw her lying in the street.

Upon the completion of the testimony, defendants moved for a directed verdict which was granted. Thereafter, plaintiff moved for an order vacating the verdict and granting a new trial. In its memorandum attached to the order denying the motion the trial court appears to have taken the position that plaintiff was guilty of negligence as a matter of law.

The only question raised by plaintiff on appeal is whether she was guilty of contributory negligence so as to proximately cause her injury.

■ In view of the fact that it is our opinion that the fact issues in this case should have been submitted to a jury, we shall not attempt to go into further details with reference to the record. The law is well settled in this state that it is only in the clearest of cases, when the facts are undisputed and it is plain that all reasonable men can draw but one conclusion from them, that the question of contributory negligence becomes one of law. Heikkinen v. Cashen, 183 Minn. 146, 235 N. W. 879, and cases cited; Holz v. Pearson, 229 Minn. 395, 39 N. W. (2d) 867. Under the facts and circumstances here, it would be difficult for us to say that reasonable men could come to but one conclusion as to the negligence of plaintiff.

■ We are cognizant of the rule in Mix v. City of Minneapolis, 219 Minn. 389, 18 N. W. (2d) 130, where this court held that, although the trial court had directed a verdict on the sole ground of contributory negligence and although findings of contributory negligence as a matter of law were not sustained, nevertheless, the order directing the verdict should be upheld as to any defendant if, upon an examination of the record, there was nothing to sustain a finding of negligence. We would be unable to say from an examination of the record here that there would be nothing to sustain a finding of negligence against defendants in the event a jury should so determine. It appears that plaintiff must have been out on the crosswalk six or seven feet when the collision occurred. The facts also show that the driver of the bus, at the time he was making the right-hand turn onto Hennepin avenue, was sitting behind the wheel in a position opposite the side of the bus where plaintiff either collided with or was struck by the bus. It was his duty to use reasonable care in keeping a proper lookout ahead. Whether he did that, under the facts and circumstances here, was a question for the jury.

Without further comment, it is our opinion that justice will be better served if the fact issues in this case are submitted to a jury for determination.

Reversed and new trial granted.