41609.   MUNDAY v. BRISSETTE et al.

148

ARGUED NOVEMBER 1, 1965—DECIDED JANUARY 28, 1966—
REHEARING DENIED FEBRUARY 11, 1966—

150

*Lokey & Bowden, Hamilton Lokey, Glenn Frick,* for appellant. *Bryan, Carter, Ansley & Smith, M. D. McLendon, N. Forrest Montet,* for appellees.

FELTON, Chief Judge. ■ Defendant Brissette filed a motion to be dismissed as a party appellee on the ground that there is no question pending before this court as to the correctness of the verdict as to him. *Code Ann.* § 6-802, as re-enacted by Ga. L. 1965, pp. 18, 20 (Appellate Practice Act of 1965, § 4) provides in part as follows: "All parties to the proceedings in the lower court *shall be* parties on appeal, and shall be served with a copy of the notice of appeal in the manner hereinafter prescribed." (Emphasis supplied.) The above language of the Act is all-inclusive and mandatory, with no exceptions provided. Defendant Brissette, already having been served with a copy of appellant's motion for a new trial, was made a party to the motion by order of the court allowing appellant's amendment to that effect. Furthermore, some of the grounds of appellant's motion as amended were based on alleged errors which could have been unduly beneficial to the co-defendant, hence prejudicial to the appellant. See *Atlantic C. L. R. Co. v. Coxwell,* 93 Ga. App. 159, 167 (6) (91 SE2d 135). This motion to dismiss is therefore denied.

■ ■ Appellee Suzanne Brissette filed a motion to dismiss the notice of appeal on two grounds, one of which is that the appellant has not made all parties to the proceedings in the lower court a party on appeal as required by *Code Ann.* § 6-802, as re-enacted by Ga. L. 1965, pp. 18, 20 (Appellate Practice Act of 1965, § 4). The record shows that service of the notice of appeal was acknowledged by the attorneys for both the plaintiff and defendant Brissette, therefore this ground is without merit. Even if there had not been service on all parties, however, this would not work a dismissal. *Code Ann.* § 6-809 (a), as re-enacted by Ga. L. 1965, pp. 18, 29 (Appellate Practice Act of 1965, § 13 (a)).

■ The other ground of the plaintiff's motion is that neither

of the decisions or judgments appealed from in the notice of appeal (i. e., overruling of the motion for a new trial and disallowing the amendment to the answer) is now appealable, thus subjecting the appeal to dismissal under *Code Ann.* § 6-809 (b) (2) (Ga. L. 1965, pp. 18, 29, as amended by Ga. L. 1965, pp. 240, 241; Appellate Practice Act of 1965, § 13 (b) (2)). The law in this State prior to the enactment of the above Act was that an order denying a motion for a new trial from a general verdict was final, even though no judgment has been entered on the verdict. *Alred v. Alred,* 164 Ga. 186 (137 SE 823); *Poole v. McEntire,* 209 Ga. 659, 661 (1) (75 SE2d 20). *Code Ann.* § 6-701 (a), as re-enacted by Ga. L. 1965, p. 18, which provides the instances in which appeals may be taken to this court, does not specifically exclude rulings on motions for new trials, but provides generally for appeal where the judgment is final (the cause is no longer pending in the court below) or, if it had been rendered as claimed for by the appellant, would have been a final disposition of the cause or final as to some material party thereto. Unless there is some additional factor which changes the definition of a final judgment, therefore, it must be presumed to have been continued unchanged.

"Paragraph (a) (1) [of the above Code section] restates the appealability of 'final judgment' in somewhat different terminology than [from] *Code* § 6-701, which declares merely that no cause shall be carried to the Supreme Court or Court of Appeals '. . . *While the same is pending in the court below.* . .' However, *no change in result was intended* [emphasis supplied], the parenthetical construction of (a) (1) being designed merely for clarity, in distinguishing between 'final' judgments, *traditionally* subject to review [emphasis supplied], and interlocutory judgments made appealable by subparagraphs (2) and (3)." E. Freeman Leverett, "The Appellate Procedure Act of 1965," Ga. State Bar Journal, Vol. 1, May, 1965, No. 4, p. 451 at p. 456 (Comment on Section 1 of the Appellate Practice Act of 1965, Ga. L. 1965, p. 18, Section 1 (a) (1)). Since the overruling of a motion for a new trial is, as has been indicated hereinabove, a "final" judgment, "traditionally subject to review," the above comment would seem to indicate that no change in result (i. e., to make such a ruling unappealable) is intended.

It is true that, under Federal practice, an order granting or overruling a motion for a new trial is not a final judgment from which an appeal may be taken. Armstrong v. New La Paz Gold Mining Co., 107 F2d 453, 454 (2); Ford Motor Co. v. Busam Motor Sales, 185 F2d 531 (4); Milton v. U. S., 120 F2d 794 (2); cases annotated under 28 U.S.C.A., § 1291, note 145. It is also true that the Georgia Act is based upon the Federal rules of procedure and that Federal case law normally governs in the construction of such statutes. The variance between the appealability of such order under the Federal and Georgia practice can be explained by a technical difference between the two procedures. Under Federal practice, the clerk of the court must enter a final judgment in the case after the court has overruled the motion for a new trial, which judgment encompasses both the judgment on the verdict and the ruling on the motion. Thus, the ruling on the motion is not the final judgment, but is in the nature of an interlocutory ruling. See Ford Motor Co. v. Busam Motor Sales, supra, p. 533 (4). Under Georgia practice, on the other hand, the judgment overruling the motion for a new trial is a final judgment since no subsequent judgment disposing of the case is necessary, either under the newly adopted procedure or the former one. Another judgment is necessary under Federal practice. Therefore, in Georgia the ruling of the court on the motion is one which is final and hence appealable. Of course, since the filing of a motion for a new trial is made no condition precedent to appeal, by Code Ann. § 6-702 (Ga. L. 1965, pp. 18, 20), an appeal may be made directly from any other appealable judgment, ruling or order, but this does not negate the appealability of the ruling on the motion for a new trial when that procedure is utilized and it is desired to appeal from such ruling. The result is practically identical, moreover, since the same grounds of appeal may be urged whichever judgment is appealed from and appellants are not limited to the grounds of a motion for a new trial in any appeal. Code Ann. § 70-301, as amended by Ga. L. 1965, pp. 18, 30, § 16 (a).

Code Ann. § 6-1202, as re-enacted by Ga. L. 1965, pp. 18, 32, provides suggested forms for notices of appeal. On these forms it is stated that the named defendants hereby appeal from the

named order or judgment, after which is the statement, "Motion for new trial (or motion for judgment n.o.v., etc.) was filed and overruled (or granted, etc.) on_____ 19_____." The latter statement is followed by asterisks, the note thereto, which was incorporated in the Act by the General Assembly, stating as follows: "This statement would be included only where such a motion was filed for the purpose of showing that the time for appeal from the judgment complained of had been automatically extended under section 6-803." While the above form and note can be construed to indicate that the order or judgment from which appeal may be taken is one rendered prior to the one on the motion for a new trial (which is the judgment on the verdict in the instant case), it is not necessarily inconsistent with the appealability of such an order (i. e., the one on the motion). These are merely suggested forms which are apparently intended for use in appeals from orders or judgments other than rulings on motions for new trial and do not, of themselves, make such a ruling unappealable. The suggested forms of appeal are not exclusive. Their purpose is to have the appeals show on their faces the tolling of the time for appeal when the appeal is from the original judgment. The unjust effect of holding that the appeal must be taken from the judgment on the verdict rather than from the ruling on the motion for a new trial can be seen in the situation wherein a party obtains a verdict and judgment in his favor and the opposite party obtains a ruling granting him a new trial on special grounds. The party in whose favor judgment was rendered could not appeal from the ruling granting the other party a new trial under that construction, and he also could not appeal from the judgment in his own favor, hence either his right of appeal would be forestalled completely or he would be forced to proceed through a new trial before gaining the right of appeal. The result would be contrary to the stated purpose of the procedure of expediting the due administration of justice without the impediment of undue technicalities.

Section 23 of the Appellate Practice Act of 1965 (Ga. L. 1965, pp. 18, 40) provides in part that ". . . this Act shall be liberally construed so as to bring about a decision on the merits of

every case appealed, and to avoid dismissal of any case or refusal to consider any points raised therein, except as may be *specifically* referred to herein." (Emphasis supplied). Using such a liberal construction, it would be incongruous to declare unappealable a judgment (overruling the motion for a new trial) which is based upon an admittedly appealable judgment (the one on the verdict), especially since the former judgment has been traditionally appealable and has not been specifically made unappealable by the revised procedure.

Even under Federal practice, whereunder the ruling on such a motion is not a final, appealable judgment, the Federal courts have been very liberal in allowing amendment of notices of appeal (Preble v. Johnson, 275 F2d 275, 277, in which it was pointed out that a denial of a new trial is technically appealable), and in even treating appeals, expressly taken from orders denying motions for new trials, as appeals from the final judgments. 4 Moore, Federal Practice, § 24.01 [11], p. 1763; Piatek v. Government Services, Inc., 296 F2d 430 (4) and cases cited. The rationale in these cases is that such error is purely a technicality and the Rules of Civil Procedure were adopted to abolish such technicalities and to expedite the due administration of justice. *Code Ann.* § 6-809 (Ga. L. 1965, pp. 18, 29; Ga. L. 1965, pp. 240, 241) contains specific and limited grounds for dismissal and is replete with provisions for liberal amendment to meet technical objections to appeals, to the end of facilitating a proper decision on the merits. Under our construction of the Act, however, no amendment of the notice of appeal is necessitated, since we have held that the judgment overruling the motion for a new trial is a final and appealable judgment. This being so, the ruling of the court disallowing the amendment to the appellant's answer, which ruling is appealed from in the notice of appeal, is also properly reviewable under the provisions of *Code Ann.* § 6-701 (b) (Ga. L. 1965, p. 18). The motion to dismiss the appeal on the two above-stated grounds is denied.

■ Each party had the right to make a motion for a new trial independently of the other and to test the ruling thereon by separate appeals, so that neither could be dismissed against

its movant's will. *East Atlanta Land Co. v. Mower*, 138 Ga. 380, 381 (1) (75 SE 418); *Hagan v. Hudson Ins. Co.*, 48 Ga. App. 558, 562 (1) (173 SE 477); *Burns v. Richardson*, 145 Ga. 430, 432 (1) (89 SE 418). The fact that the plaintiff's motion is still pending below, therefore, does not deprive the appellant of his right to independently press his motion to its proper conclusion and test it by appeal.

■ The first enumerated error, the overruling of the general grounds of the appellant's motion for a new trial, has been expressly abandoned, as has error number 17. The second enumerated error is the overruling of the special grounds of the motion. These grounds are the subject of the remaining enumerated errors which will be considered individually.

■ Enumerated errors numbered 3, 4, 5, 6, 7, 8 and 9 all deal directly with the matter of the applicable speed limit at the time and place of the collision. Numbers 3 through 8 complain of charges which instructed the jury that the question of the applicable speed limit is one of law for the court to decide and that the 60 mph limit was applicable at that place since the court was of the opinion that the evidence did not show that the 35 mph speed limit signs were erected by the Director of Public Safety, as provided by law.

*Code Ann.* § 68-1626 (b, 2) (Ga. L. 1953, Nov. Sess., pp. 556, 577) establishes the general daytime speed limit of 60 mph and (b, 1) sets the limit of 35 mph in any business or residence district, "residence district" being defined by *Code Ann.* § 68-1504 (5) (b) (Ga. L. 1953, Nov. Sess., pp. 556, 561), which contains the proviso that "when such territory is located outside the incorporated limits of a city or town, it is designated and marked as such by the Director of Public Safety." *Code Ann.* § 68-1607 (a) (10) (Ga. L. 1953, Nov. Sess., pp. 556, 557) provides as follows: "(a) The provisions of this law [Chapters 68-15 through 68-17; §§ 68-9926, 68-9927] shall not be deemed to prevent local authorities with respect to streets and highways under their jurisdiction, and within the reasonable exercise of the police power from: . . . 10. Altering the speed limits as specified herein." *Code Ann.* § 68-1626 (d) provides: "The lawful speed limits set forth in this section may be altered *as*

*authorized in sections 68-1627 and 68-1628."* (Emphasis supplied.) *Code Ann.* § 68-1627 (Ga. L. 1953, Nov. Sess., pp. 556, 579; Ga. L. 1957, pp. 419, 420) provides as follows: "Whenever the Director of Public Safety and the State Highway Board, upon request from the county board of roads and revenue of any county, or ordinary, in those counties not having a board of commissioners of roads and revenues, or upon their own initiative, shall determine upon the basis of an engineering and traffic investigation that any lawful speed limit heretofore set forth is greater than is reasonable or safe under the conditions found to exist on any State highway or upon any part thereof, or upon any other street or highway in any unincorporated area, said director may determine and declare a reasonable and safe lawful speed limit thereon which shall be effective at all times or during hours of daylight or darkness or at such other times as may be determined when appropriate signs giving notice thereof are erected."

*Code Ann.* § 68-1610 (c) (Ga. L. 1953, Nov. Sess., pp. 556, 569) provides as follows: "The disregard or disobeyance of the instructions of any official traffic-control device or signal, placed in accordance with the provisions of this law, by the driver of a vehicle, shall be deemed as prima facie evidence of a violation of law, without requiring proof of who and by what authority such sign or device has been erected." This statute has been construed to mean that "the movant may offer evidence that a traffic-control sign or device existed at the given spot; the burden is then upon the person objecting to the evidence to offer evidence showing that such signal was not placed there by any proper governmental authority. The evidence might be general, as showing that the signal in question is not one used by the authority having jurisdiction at that place; it might be a showing that it was placed there by an unauthorized authority, or it might be any other type of evidence *sufficient to overcome the prima facie showing* that such device existed and should therefore have been obeyed." (Emphasis supplied.) *Fields v. Jackson,* 102 Ga. App. 117 (3 a), 125 (115 SE2d 877); *Carroll v. Yearty,* 102 Ga. App. 677 (2) (117 SE2d 248); *Noland v. England,* 101 Ga. App. 306 (113 SE2d 649); *Blanton v. Doughty,*

107 Ga. App. 91, 93 (129 SE2d 376); *Wallace v. Willis*, 111 Ga. App. 576, 578 (142 SE2d 383). The only evidence in the case at bar which might tend to overcome the prima facie showing of official traffic-control signs governing the area in question is the testimony of Captain Mitchell of the Fulton County Department of Public Safety, that the 35 mph speed limit signs on both sides of the area involved, which was outside the city limits in the county, were placed there on or about November 29, 1960, *by the Fulton County Public Works Department*. Although the statutes above-quoted apparently require the *determination* of 35 mph zones in unincorporated areas to be made by the Director of Public Safety, there is no requirement that the physical *erection* of the signs giving notice of such designated speed zones be done by the Director personally, rather than through an agent. The evidence merely that the Fulton County Public Works Department erected the signs, therefore, is not sufficient to show as a matter of law that that department was not authorized by the Director to erect the signs, bearing in mind the fact that the burden of overcoming the presumption of the validity of the signs was on the plaintiff. The determination of the applicable speed limit depended upon a finding of fact as to whether the signs were officially placed and the court therefore erred in removing such issue from the jury's consideration. The charge complained of in error number 9, to the effect that a violation of *Code Ann.* § 68-1626 (a) would be negligence per se *if the plaintiff was an invitee* was erroneous, since whether the violation was negligence per se depended upon the issue of the validity of the signs rather than upon the plaintiff's status. Enumerated errors numbered 3 through 9 are therefore meritorious.

■ Enumerated error number 10 complains of the following charge: "If, however, plaintiff was not an invitee, but was a guest passenger, before negligence would be shown in her favor and against her brother, it would have to appear that her brother failed to exercise slight care for her safety in some one or more of the respects alleged in subparagraphs b, c, d and e of paragraph twelve, and was guilty of gross negligence in such respect." This charge did not exclude the right of the jury to consider that

certain acts of ordinary negligence, when considered together, could be considered to amount to gross negligence. *Parker v. Bryan,* 93 Ga. App. 88, 91 (91 SE2d 49). This charge was therefore not error for the *reason assigned.*

The charge was harmful error, however, for the reason that it permitted the jury to find that the plaintiff was a guest passenger, whereas the evidence demanded a finding that she was an invitee. Her father testified that she was the one who had permission to use the automobile on the day in question. The plaintiff and her brother, co-defendant Brissette, both testified that she agreed to let him use the automobile to get to school on the condition that he would take her to work first, then pick her up after work. Clearly, the arrangement was for the mutual and substantial benefit of the plaintiff and her brother. Her benefit was in having a ride to her place of work. For this reason, this charge, as well as other charges to like effect, was erroneous.

■ In the charge complained of in enumerated error 11, the court instructed the jury to the effect, that if the plaintiff was a guest passenger, the *mere* showing of violation of the law would not constitute negligence. This charge was error. The manner in which the speed law is violated may constitute gross negligence. *Hennon v. Hardin,* 78 Ga. App. 81 (50 SE2d 236); *Atlantic C. L. R. Co. v. Coxwell,* 93 Ga. App. 159, 167 (6), supra; *Parker v. Bryan,* 93 Ga. App. 88, supra. It was also error for the reason discussed in Division 5, hereinabove, i. e., that the evidence demanded a finding that the plaintiff was an invitee. Enumerated error 11 is meritorious.

■ The court charged as to the measures of damages, inter alia, that in determining the amount of damages, if any, to be awarded the plaintiff for *personal injuries* "[t]he law prescribes no standard for such determination of amount except the enlightened consciences of fair and impartial jurors, seeking to do right and justice to both parties, and bearing in mind that damages are given for injuries inflicted and should be proportioned thereto. *Now, taking up the next item of damage, which is pain and suffering consequent and attendant upon such personal injuries, past, present and future.* The court charges the jury this

is a legitimate item of injury and damage, if sustained by the evidence. . . For pain and suffering, the law prescribes no standard except, that as heretofore referred to by the court, namely, the enlightened consciences of fair and impartial jurors. . . . [etc.]" (Emphasis supplied.) The above charge was harmful error in that it conveyed the erroneous impression that the mental and physical pain and suffering resulting from the scars and disfigurement of the plaintiff's face, for which damages are sought, was a separate item of damages, distinguishable from the damages for personal injuries exclusive of the lost past wages. "If a plaintiff seeks to recover for pecuniary losses resulting from lost time or permanent diminution of capacity to labor and earn money, he should introduce evidence on which to predicate such a recovery. But it has been held in this State that permanent diminution of capacity to labor is an element of damages for the consideration of the jury, in determining the amount of such recovery, along with evidence as to pain, suffering, disfigurement, or the like, although no pecuniary value is proved by the evidence. It has been said that the loss of capacity to work is in the nature of pain, though no pecuniary loss be shown." *Atlanta & W. P. R. Co. v. Haralson*, 133 Ga. 231, 235 (65 SE 437) and cases cited. By its appearing that there were two separate *items* of damages involved to which the standard of the enlightened consciences of the jury was applicable, rather than merely elements of the same item, the charge permitted the jury to award double damages, although the court subsequently cautioned them against such award. Enumerated error 16 is meritorious.

■ Enumerated error 12 complained of the following charge: "The court charges you that where one is confronted with a sudden emergency, without sufficient time to determine accurately and with certainty the best thing to be done, he is not to be held to the same accuracy of judgment as would be required of him if he had more time for deliberation." This charge was incorrect and incomplete as a matter of law in that it failed to qualify the emergency as one not arising from any fault of his own or one which he did not create. See *Cone v. Davis*, 66 Ga. App. 229 (2) (17 SE2d 849). The court elsewhere cor-

rectly charged that "if you find that John L. Brissette was confronted with a sudden emergency, *which he did not create,* then the court charges you that he would not be liable if he merely failed to exercise good judgment under the circumstances." The charge complained of was probably not cured by the other correct charge, but since it was apparently an inadvertent error which would probably not reoccur on another trial, it will not be ruled on.

■ Enumerated errors numbered 13, 14, 18, 19, 20 and 21 all deal with alleged errors in either charging or refusing to charge with respect to the plaintiff's freedom from negligence; her control over defendant Brissette's driving as affecting the imputation of his negligence, if any, to her; her inability to recover if she could have avoided the consequences of the negligence, if any, of the defendants; and her comparative negligence. The mere fact that the plaintiff's brother was driving the automobile with her permission did not give her the right to control his driving, since the ultimate permission for either of them must have been obtained from their father, to whom the automobile belonged. It has already been ruled, in Division 6 hereinabove, that the evidence demanded a finding that the plaintiff was an invitee in the automobile. These charges or refusals to charge were both justified by the evidence; therefore no error is shown therein.

■ Enumerated error 15 complains of the following charge of the court: "The court charges you that if defendant B. C. Munday, Jr., was emerging from a private driveway, he would not have the right of way." *Code Ann.* § 68-1653 (Ga. L. 1953, Nov. Sess., pp. 556, 590) provides: "The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right of way to *all vehicles* approaching on said highway." (Emphasis supplied.) The evidence is undisputed that the Brissette vehicle was approaching on the highway when the appellant entered the highway from his driveway. The above statute specifies *all* vehicles, which, in the absence of exceptions, must be construed to include vehicles which are in the process of passing, whether they are doing so in a legal or an illegal manner. The case of *Pass v. State,* 95 Ga. App 510, 512 (2) (98 SE2d 135) is not contrary authority. In that case the

court held that a statement by a police officer to the effect that a person approaching on a highway was entitled to the whole highway as against a person turning into a highway in his own right lane, was erroneous. In that case it is pointed out, however, that there was involved none of the circumstances under which exceptions are made to the provision of *Code Ann.* § 68-1633 (a) (Ga. L. 1953, Nov. Sess., pp. 556, 581) that all vehicles shall be driven on the right half of the roadway. In the case sub judice, on the other hand, there is evidence of the existence of one of such exceptions, namely: "When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement." *Code Ann.* § 68-1633 (a) (1). This charge was therefore not error.

██ Enumerated errors numbered 22 and 23 complain of the court's refusal to allow the filing of amendments to appellant's answer, setting out a resolution of the Board of County Commissioners showing the speed limit in the area in question to be 35 mph and alleging that the street in question was not a State highway and that official speed limit signs were posted thereon. The court did not err in failing to allow these amendments, since, under the Code sections quoted in Division 4 hereinabove, the Director of Public Safety, not the Fulton County Board of Commissioners, was authorized to establish 35 mph speed zones within the area in question and under the provisions of *Code Ann.* § 68-1627 the authority to establish such zones is extended to "any other street or highway in any unincorporated area," in addition to State highways or extensions thereof. Enumerated errors numbered 22 and 23 are therefore without merit.

The court erred in its judgment overruling the motion for a new trial as amended for the reasons assigned in enumerated errors numbered 3, 4, 5, 6, 7, 8, 9, 10, 11 and 16. A new trial should have been granted as to both defendants.

*Judgment reversed. Jordan and Deen, JJ., concur.*