S89A0149. McCLURE v. GOWER et al.
S89X0344. GOWER v. McCLURE et al.
S89A0615. GOWER v. WGBA, INC. et al.

(385 SE2d 27)

MARSHALL, Chief Justice.

This case draws into question the punitive damage provisions of the Tort Reform Act of 1987, OCGA § 51-12-5.1, and the cross-appeal provisions of the Appellate Practice Act. OCGA § 5-6-38.

In this case, Gower brought suit against McClure for specific performance of a real-estate sales contract. Gower also named WGBA, Inc., as a party defendant, based on allegations of tortious interference by WGBA with Gower's rights under his contract with McClure. After the trial court rendered a decree of specific performance, the jury returned a verdict against McClure, awarding Gower actual damages, as well as attorney fees incurred as part of his expenses of litigation. Verdicts were also returned against WGBA, in which Gower was awarded both actual and punitive damages.

The facts of this case are not overly complex:

Gower is an attorney, and the subject property is adjacent to his law office; he wants to use the property as a parking lot.

McClure entered into a contract to sell the property to Gower for $85,000 after McClure's real-estate agent told Gower that McClure wanted to "net" $80,000 for the property, and the agent wanted a $5,000 commission.

---

A closing date was agreed to by McClure's real estate agent and Gower's attorney approximately one week in advance, and this was communicated to both Gower and McClure. On the morning of the scheduled closing, McClure informed the closing attorney that he, McClure, would be unable to attend the closing because he was going out of town, although McClure further stated that he would return in a day or two and that a contract extension would be unnecessary. Gower arrived at the closing at the scheduled time, presented a check for the amount due, and signed the requisite documents. When McClure returned to town, his real estate agent tried repeatedly and unsuccessfully to communicate with him. After approximately one week, the agent finally spoke to McClure, and he stated that he did not intend to close the contract, because a strategically located advertising sign of WGBA radio was located on the property; his son was affiliated with the radio station; and Gower would not agree to let the sign remain on the property.

The jury returned a verdict against McClure for $586.36 in actual damages, consisting of lost interest on the earnest money deposit, and $8,219.10 in litigation expenses/attorney fees; in regard to the amount of the attorney fee award, Gower's attorney gave testimony concerning his training and credentials, his hours spent on this case, and his customary hourly fee.

The jury returned a verdict against WGBA for $33 in actual damages, also consisting of lost interest on the earnest money deposit, and $1,500 in punitive damages.

In Case No. S89A0149, McClure filed an appeal in this Court as to the trial court's decree of specific performance and the jury's attorney fee award to Gower.

In Case No. S89A0615, Gower filed an independent appeal in the Court of Appeals, complaining about the trial court's refusal to allow closing argument of counsel in the latter phase of this bifurcated tort trial. A motion to dismiss Gower's appeal was filed by WGBA on the ground that Gower failed to file requisite discretionary appeal procedures under OCGA § 5-6-35 (a) (6), in that Gower's appeal, standing alone, is an appeal of a money judgment in an amount less than $2,500. Finding that Gower's appeal in the Court of Appeals "may function as a cross appeal" to McClure's appeal in this Court, the Court of Appeals transferred Gower's appeal to us.

In Case No. S89X0344, Gower amended his notice of appeal with respect to WGBA, by designating it a notice of cross-appeal, naming this Court, rather than the Court of Appeals, as the appellate court to which the cross-appeal was to be taken.[1]

---

[1] OCGA § 5-6-38 (a) requires a notice of appeal to be filed within 30 days after entry of

For reasons which follow, we affirm the judgment in Case No. S89A0149, which is McClure's appeal of the judgment entered against him. We reverse the judgment in Case No. S89A0615, which is Gower's appeal of the judgment entered against WGBA. And, inasmuch as Case No. S89X0344 is also an appeal by Gower of the judgment entered against WGBA, we dismiss this appeal as duplicative.

1. Contrary to McClure's assertions, there was ample evidence as to the sufficiency of the purchase price. See generally *McLoon v. McLoon*, 220 Ga. 18 (2b) (136 SE2d 740) (1964). There was adequate proof of tender, which was, in any event, either waived by McClure, *Good v. Tri-Cep, Inc.*, 248 Ga. 684 (2) (285 SE2d 527) (1982), or vitiated by its conditional nature. *Cotton States 'Mut. Ins. Co. v. McFather*, 255 Ga. 13 (334 SE2d 673) (1985). And, there is evidentiary support for the amount of the attorney fee award. See *I.M.C. Motor Express, Inc. v. Cochran*, 180 Ga. App. 232 (1) (348 SE2d 750) (1986); *Altamaha &c. Center v. Godwin*, 137 Ga. App. 394 (2) (224 SE2d 76) (1976). Cf. *Price v. Mitchell*, 154 Ga. App. 523 (6) (268 SE2d 743) (1980) and cits.[2]

2. OCGA § 5-6-35 (a) (6) requires an application for discretionary appeal "when there is an action for damages and the result is a judgment of $2,500 or less. See *City of Brunswick v. Todd*, 255 Ga. 448 (339 SE2d 589) (1986)." *Brown v. Assoc. Fin. &c. Corp.*, 255 Ga. 457 (339 SE2d 590) (1986).

We have held, however, that under the Appellate Practice Act, an appeal which, standing alone, would be subject to discretionary appeal procedures, is appealable as a matter of right if it is classifiable as a cross-appeal to an appealable order. OCGA § 5-6-34 (c); *Brown v. Assoc. Fin. &c. Corp.*, supra; *Southeast Ceramics, Inc. v. Klem*, 246 Ga. 294 (271 SE2d 199) (1980); *Executive Jet Sales v. Jet America*, 242 Ga. 307 (248 SE2d 676) (1978).

In *Centennial Ins. Co. v. Sandner, Inc.*, 259 Ga. 317 (380 SE2d 704) (1989), we have recently held, in a case involving multiple parties, that a party can file a cross-appeal against another party who is not an appellant in the main appeal.

---

the appealable judgment, and a notice of cross-appeal is required to be filed within 15 days from service of the notice of appeal in the main appeal. Since final judgment was entered against McClure and WGBA on the same date, Gower's original notice of appeal, which was filed within 30 days of the entry of the judgment, was filed within the 15-day time limit as well.

In regard to whether his original notice of appeal could be amended so as to designate this Court rather than the Court of Appeals as the appellate court to which the appeal was to be taken, Gower, citing *Griffin v. Johnson*, 157 Ga. App. 657 (1) (278 SE2d 422) (1981), and *Blackwell v. Cantrell*, 169 Ga. App. 795 (1) (315 SE2d 29) (1984), argues that this was permissible under OCGA § 5-6-48 (d).

[2] McClure argues that there is insufficient evidence to support the amount of the attorney fee award; he does not challenge the recoverability of attorney fees in this case.

In so holding, we reversed *Sandner, Inc. v. Centennial Ins. Co.*, 189 Ga. App. 277 (375 SE2d 611) (1988), in which the Court of Appeals, in an en banc decision, and in reliance upon *Glennville Wood &c. Co. v. Riddlespur*, 156 Ga. App. 578 (1) (276 SE2d 248) (1980), had reached the opposite conclusion.

Although it is argued here that McClure is not a party to Gower's appeal of the judgment entered against WGBA, OCGA § 5-6-37 states that "all parties to the proceedings in the lower court shall be parties on appeal." See *Munday v. Brissette*, 113 Ga. App. 147, 150 (1) (148 SE2d 55) (1966), rev'd on other grounds sub nom., *Brissette v. Munday*, 222 Ga. 162 (149 SE2d 110) (1966).

However, OCGA § 5-6-38 (a) provides that, in lieu of filing a cross-appeal, "the appellee may at his option file an independent appeal." In this case, Gower did file an independent appeal in the Court of Appeals, presumably because the extant decisional authority at the time he filed that appeal did mandate that he follow such procedure.[3]

In any event, the rationale underlying the previously cited decisions is that it is the intention of the Appellate Practice Act that it

> be liberally construed so as to bring about a decision on the merits of every case appealed and to avoid dismissal of any case or refusal to consider any points raised therein, except as may be specifically referred to in [the Act]. [OCGA § 5-6-30.]

See *Holcomb v. Gray*, 234 Ga. 7 (214 SE2d 512) (1975). See also OCGA §§ 5-6-37; 5-6-38; and 5-6-48 (b) and (d). And, our state appellate court operating procedures dictate that whenever an appeal docketed in one appellate court is found to be within the jurisdiction of the other appellate court, it shall be transferred rather than dismissed.

With this in mind, we hold that Gower's appeal is properly before us as a cross-appeal to McClure's appeal and, thus, should be decided on its merits.

3. OCGA § 51-12-5.1 was enacted as § 5 of the Tort Reform Act of 1987, which sets forth substantive and procedural rules to govern punitive-damage awards in tort actions in this state. See also § 6 of the Act, amending OCGA § 51-12-6.[4]

---

[3] At the time Gower filed the notice of appeal with respect to the judgment entered against WGBA, *Glenville Wood &c. Co. v. Riddlespur*, supra, as followed by the Court of Appeals in *Sandner, Inc. v. Centennial Ins. Co.*, supra, held that a party could not file a cross-appeal against another party who was not an appellant.

[4] Prior to passage of the Tort Reform Act of 1987, OCGA § 51-12-6 provided,

In a tort action in which the entire injury is to the peace, happiness, or feelings of the plaintiff, no measure of damages can be prescribed except the enlightened con-

Subsection (a) of § 51-12-5.1 defines punitive damages,[5] and subsection (b) states the circumstances under which such damages are awardable.[6] Subsection (c) states that, "[p]unitive damages shall be awarded not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant."

Subsection (d) is divided into two paragraphs.

Paragraph (1) of subsection (d) provides, in pertinent part, that, "[i]n any case in which punitive damages are claimed, the trier of fact shall first resolve from the evidence produced at trial whether an award of punitive damages shall be made."

Paragraph (2) provides:

> If it is found that punitive damages are to be awarded, the trial shall immediately be recommenced in order to receive such evidence as is relevant to a decision regarding what amount of damages will be sufficient to deter, penalize, or punish the defendant in light of the circumstances of the case. It shall then be the duty of the trier of fact to set the amount to be awarded according to subsection (e), (f), or (g). . . .[7]

During opening and closing argument at the initial phase of this

---

sciences of impartial jurors. In such a case, the worldly circumstances of the parties, the amount of bad faith in the transaction, and all the attendant facts should be weighed; and the verdict of the jury should not be disturbed unless the court suspects bias or prejudice from its excess or its inadequacy.

The 1987 amendment rewrote the second sentence to provide, "In such an action, punitive damages under Code Section 51-12-5 or Code Section 51-12-5.1 shall not be awarded."

[5] Subsection (a) states,

As used in this Code section, the term "punitive damages" is synonymous with the terms "vindictive damages," "exemplary damages," and other descriptions of additional damages awarded because of aggravating circumstances in order to penalize, punish, or deter defendant.

[6] Subsection (b) states that,

[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

[7] Subsection (e) of § 51-12-5.1 provides for the award of punitive damages in tort cases arising from product liability; and it is generally provided that there shall be no limitation regarding the amount of the award, although there may be only one award for any act or omission, with seventy-five percent of any amounts awarded, less a proportionate part of litigation expenses (including reasonable attorney fees) being paid into the state treasury.

Subsection (f) states that in other tort actions, if the defendant acted, or failed to act, with the specific intent to cause harm, there shall be no limitation regarding the amount of punitive damages awarded.

Subsection (g) states that in tort actions not provided for in subsections (e) and (f), the amount of the punitive damage award shall be limited to a maximum of $250,000.

trial, Gower's attorney was allowed to make a presentation to the jury as to why punitive damages should be awarded in this case. And, the trial judge gave instructions to the jury in regard to the reasons for awarding punitive damages and the circumstances under which such damages are awardable.

However, at the phase of the trial in which the amount of the punitive damage award was adjudicated, the trial court did not allow counsel to present closing argument to the jury. In this regard, the court ruled that OCGA § 51-12-5.1 (d) (2) provides for the receipt of evidence, but not the argument of counsel, in regard to the amount of punitive damages at the latter stage of a bifurcated tort trial.

We hold that in so ruling, the trial court committed reversible error.

The courts in this country have taken divergent views in regard to whether or not it is per se reversible error, where counsel in a civil case has been denied the right to argue material issues of fact to the jury; and there is no bright line of demarcation dividing those cases in which it has been held that there was an infringement of this right by the trial court, from other cases in which it has been held that there was only a permissible regulation of the right in the exercise of the trial court's discretion. See *Givans v. Chicago &c. R. Co.*, 238 Minn. 176 (56 NW2d 306, 38 ALR2d 1393) (1952).

In this state, we have held that the right of the parties to be represented by counsel at all stages of a trial is a fundamental component of our system of jurisprudence. *Reynolds v. Reynolds*, 217 Ga. 234 (25) (123 SE2d 115) (1961). And, in regard to the presentation of arguments concerning the full range of evidentiary issues in the case, it has been held:

> The attorneys in the cause are not mere carriers to bring in materials for constructing the edifice; they have a right, as representing the parties, to suggest where every important stone should be laid, and to assign reasons, drawn from legitimate sources, in support of their suggestions. Their reasons may be good or bad, but such as they are they should be heard and considered. [*VanDyke v. Martin*, 55 Ga. 466, 470 (1875).]

> The duties of the advocate are among the most elevated functions of humanity. Whilst he is the representative of his client's cause. . . [h]is business is to comment on the evidence — to sift, compare and collate the facts — to draw his illustrations from the whole circle of the sciences — to reason with the accuracy and power of the trained logician, and

enforce his cause with all the inspirations of genius, and adorn it with all the attributes of eloquence. It is the business of the Jury to listen, to be informed, but not to obey. They sit, the sworn arbiters of the cause, bound by the most solemn sanctions, to do justice between the parties, *according to the evidence.* [Emphasis in original.] [*Garrison v. Wilcoxson,* 11 Ga. 154, 159 (3) (1852).]

In our general statutory provisions concerning civil practice and procedure in superior courts, counsel are entitled, as a matter of right, to two hours on a side in which to argue their case. OCGA § 9-10-180; *Lovett v. Sandersville R. Co.,* 199 Ga. 238 (33 SE2d 905) (1945).

Prior to the enactment of § 51-12-5.1, a trial judge had discretion under OCGA § 9-11-42 (b) to try the issue of punitive damages in a tort case separately from the remainder of the case, in a bifurcated procedure, or in a separate trial. *Moore v. Thompson,* 255 Ga. 236 (336 SE2d 749) (1985) and cits.

Thus, in regard to the adjudication of issues concerning the recoverability and amount of punitive damages in a tort case, OCGA § 51-12-5.1 made a bifurcated trial mandatory, whereas it had previously been discretionary with the trial court.

While it is true that this statute is silent on the subject of argument of counsel concerning the amount of punitive damages, we consider this an insubstantial basis upon which to deny a litigant such a fundamental right.

4. Although it is true that the punitive damage award here is approximately 45.5 times higher than the actual damage award, punitive damages may be given even where recoverable, actual damages are small, and the amount of the punitive damage award is "exclusively a question for the jury to determine." *Batson v. Higginbothem,* 7 Ga. App. 835, 839 (2) (68 SE 455) (1910).

*Judgment affirmed in Case No. S89A0149. Judgment reversed in Case No. S89A0615. Appeal dismissed in Case No. S89X0344. All the Justices concur.*

DECIDED OCTOBER 26, 1989 —
RECONSIDERATIONS DENIED NOVEMBER 29, 1989 AND DECEMBER 20, 1989.

*William C. Rumer, Albert W. Stubbs, Stephen G. Gunby,* for McClure and WGBA, Inc.
*Danny L. Dupree,* for Gower et al.
*Charles A. Gower,* pro se.